## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 2012 | **DATE** | 12/6/2004 |
| **CASE TITLE** | K. Long vs. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants plaintiff's motion for summary judgment (8-1) and remands the case for further determination of his disability. The Court denies defendant's summary judgment motion (11-1). The Clerk is directed to enter judgment remanding the case to the Social Security Administration for further consideration consistent with this Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 0 7 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 13 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| K. LONG, on behalf of John Long, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 04 C 2012 |
| v. | ) | |
| | ) | |
| JO ANNE BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**DOCKETED**
**DEC 0 7 2004**

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff K. Long, the mother of John Long, who died on January 19, 2003, filed this suit on his behalf, seeking review of the Social Security Administration's decision to deny his claim for disability benefits. The Commissioner of Social Security has moved for summary judgment affirming the SSA's decision; Long has moved for summary judgment reversing the decision and awarding benefits, or alternatively for a remand. For the reasons stated below, the Court grants Long's motion, denies the Commissioner's motion, and remands the case for further consideration.

### Facts

John Long was born on May 6, 1960, was twenty-eight years old at the alleged onset of his disability in 1988, and died in 2003 at age forty-two. Long had a high school education and worked as a carpenter until 1988.

In December 1998, Long applied for Social Security disability benefits. He alleged that he had become disabled as the result of an injury to his back that he suffered in June 1988 while lifting heavy objects at work. Long continued to work until he was injured a second time, in

1

\13

August 1988, but he was unemployed after that date.

Long suffered two herniated lumbar discs. According to treatment notes of Dr. Per Freitag, Long's primary treating physician from 1988 until 1999, and Dr. Lori Portnoy, Long's treating chiropractor, Long had persistent lower back pain and sharp pain down his right leg, with associated numbness and tingling in his right foot. R. 20, 360. Long underwent two back surgeries, a percutaneous lumbar diskectomy and a microscopic right hemilamenectomy, in November and December 1988. Following surgery, Long entered physical therapy and attended monthly appointments with Dr. Freitag. In the months after surgery, Long suffered from spasms, numbness, and limited range of motion, and Dr. Freitag opined that he had a "slow and far from satisfactory progress." R. 268-69.

In September 1989, based on a recommendation from Dr. Freitag, Long was given a functional capacity evaluation to determine if he could perform any carpentry-related duties. The capacity assessment found that in an eight hour workday, Long could sit for five hours, but only one hour continuously; stand for four to five hours, one hour continuously (however, Long reported discomfort at fifteen minutes and light pain after twenty minutes); walk for five hours, with frequent long distances; lift ten pounds frequently and twenty pounds occasionally; bend, squat, crouch and kneel occasionally and crawl, climb stairs, and balance frequently. R. 327-36. Overall, Long's recommended safe work capacity was "light," and he was switched from general reconditioning therapy to a work hardening program, with four to six hour sessions five days a week. R. 326. After about a month of the work hardening program, however, Long's condition had progressively deteriorated, and he was returned to a general reconditioning program because of increased pain, soreness, and a depressed right knee jerk. At that time (early November 1989), Dr. Freitag opined that Long could not work, and he recommended that "pain be the

modifier as to what he can do" and noted "that he will stop before he harms anything." R. 302.

In December 1989, Long was discharged from physical therapy; this was attributed to his missing four out of seventeen appointments, though Long attributed it to problems with his health insurer. Without physical therapy, Long's condition worsened. R. 302. In January 1990, Dr. Freitag described Long's condition as "failed back syndrome." He prescribed Vicodin for pain, and opined that Long was "unable to carry out the duties normally required of a carpenter" and that "even sedentary work…is difficult, since sitting is markedly painful for him." R. 269.

In March 1990, Long had an epidural steroid injection, and he began seeing Dr. Portnoy, a chiropractor, regularly until 1992. In July and August of 1990, Long's symptoms ranged from having some back spasms to feeling "pretty good." From March through November 1991, Long saw Dr. Portnoy every three days, and her records indicated that Long had taken during that period a trip to Wisconsin, where he performed unspecified "light yard work." After 1992, Long did not see Dr. Portnoy again until January 1995. However, by November 1994, Long's pain began to worsen; he returned to physical therapy; and he was unable to perform any household chores or tasks. R. 20, 22. In November 1994, Long was also treated for dependence on Vicodin. R. 199.

In 1995, Long started seeing both Dr. Portnoy and Dr. Freitag again. In May 1995, because of persistent back pain, Long underwent additional back surgery and suffered an incisional hernia. Following treatment for the incisional hernia, Long complained of constant pain in his back, neck, abdomen, and groin area. Long saw Dr. Sinclair at the University of Chicago Pain Management Clinic from October 1997 until August 1998, when Dr. Sinclair ended their relationship because Long was reportedly obtaining pain medication from other sources. R. 480-82. In 1998, an MRI revealed that Long also had a herniated disc in his neck.

R. 361. In 1999, Dr. Freitag opined that Long was "incapacitated from persistent pain" and that he was "permanently disabled from any and all occupations." In October 2000, Long was diagnosed with chronic obstructive lung disease and right heart failure, with pulmonary artery hypertension. Following this diagnosis, Long had to use an oxygen tank. R. 398.

At the 2001 hearing on Long's claim for benefits, he testified that in the year following his 1988 surgeries he could perform some household chores, including sweeping, mopping and some shopping. *See* R. 20. Long also stated that during that period, he could "probably" sit for about a half hour continuously, could stand continuously for ten to fifteen minutes, and could probably walk about one block. *See id.; see also,* R. 75-78.

### The ALJ's decision

To be eligible for disability benefits, Long was required to prove that he was disabled within the meaning of the law on or prior to the date he was last eligible for benefits – his "date last insured," or DLI – December 31, 1989. *See Hughes v. Chater*, 895 F. Supp. 985, 992 (N.D. Ill. 1995). "Disability" under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905.

To determine whether Long suffered from a disability as defined by the Social Security Act, the ALJ followed a five-step inquiry mandated by 20 C.F.R. § 416.920. This required the ALJ to evaluate in sequence whether, as of Long's DLI : (1) he was employed; (2) he had a severe impairment; (3) his impairment met or equaled one of the impairments listed in the applicable regulations, *see* 20 C.F.R. § 404, Subpt. P., App. 1; (4) he could perform his past work; and (5) he was capable of performing work in the national economy. *See, e.g., Clifford v.*

4

*Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

If Long was not working, had a severe impairment, and that impairment met or equaled a listed impairment, then he was disabled and eligible for benefits. If Long's impairment did not meet or equal a listed impairment, but was severe enough to prevent Long from doing his past relevant work, then the SSA had the burden of showing that there were jobs available for which Long was qualified. *See Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). If the SSA failed to meet that burden, Long was eligible for benefits.

The ALJ found that Long's condition did not meet any listed impairment and that as of the DLI, he had the capacity to lift or carry ten pounds at a time occasionally; stand or walk for up to two hours in an eight hour day, and up to fifteen minutes at a time; sit with normal breaks for up to six hours in an eight hour day, so long as he was allowed to stand at thirty minute intervals for a period of two to three minutes; occasionally climb ramps or stairs, balance, squat, stoop, crouch, kneel and crawl; and occasionally perform overhead work. R. 19. At the hearing, a vocational expert (VE) testified that with this capacity, Long could perform sedentary unskilled work, such as packaging, assembly, and inspection, and there were numerous such jobs in the Chicago region. The VE stated that to maintain those jobs, Long would have to be able to sit for up to six hours in an eight hour day, and that standing up every half hour would not affect his ability to do the jobs so long as it was only for a couple minutes. *See* R. 89-95.

The ALJ ruled that in view of Long's residual functional capacity, he was not disabled within the meaning of the Social Security Act. In December 2003, the SSA's Appeals Council denied Long's request for review.

## Discussion

This Court may reverse the Commissioner's decision to deny benefits only if it is "not

supported by substantial evidence or if [it is] the result of an error of law." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). If the decision results from an error of law, the Court has authority to "remand in conjunction with a judgment affirming, modifying, or reversing the Secretary's decision." *Campbell v. Shalala*, 988 F.2d 741, 745 (7th Cir. 1993); *see* 42 U.S.C. § 405(g), sentence four. When an ALJ commits an error of law, "reversal is...warranted irrespective of the volume of evidence supporting the factual findings." *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

As noted above, the ALJ found that at the time of his DLI, Long could sit for up to six hours in an eight hour workday, so long as he alternated between sitting and standing at thirty minute intervals for a period of two to three minutes. R. 19. This determination was critical to the ALJ's decision that Long could perform the type of sedentary work identified by the vocational expert.

In making this determination, however, the ALJ "failed to build an accurate and logical bridge from the evidence to [his] conclusion," as required when an ALJ denies benefits. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). As Long points out, there is nothing in the record – either the testimony or the medical evidence – supporting the proposition that two to three minutes of standing would alleviate the pain he would experience from sitting for thirty minutes off and on for six hours.

In reaching his determination regarding Long's capacity, the ALJ evidently rejected Long's testimony regarding the limitations on his ability to sit at the relevant time. At the administrative hearing, Long testified that in the year following his December 1988 surgery he could only get through some days alternating sitting and standing without laying in a recliner or on a sofa with pillows. R. 69. Long further stated that he could not alternate sitting and standing

6

on a constant basis for five days a week, that he could only stand for ten to fifteen minutes continuously, and sit for an hour with pillows. R. 75-76. Long's testimony regarding his limited ability to sit was corroborated by Dr. Freitag's treatment notes from April and November 1989, which reflect that Long complained that his pain was particularly prominent after sitting and that he was having difficulty driving. R. 302. After Long was discharged from physical therapy on December 1, 1989, his pain became significantly worse, such that by January 4, 1990 (four days after Long's DLI), he could not bend to the side, and he had to be given more Vicodin for pain as well as a muscle relaxer. R. 269, 302. By late January 1990, Dr. Freitag found that "even sedentary work at this point is difficult, since sitting is markedly painful for him." R. 269.

Despite this evidence, the ALJ made no mention of Long's testimony regarding his sitting limitations. Though an ALJ is not required to "provide a written evaluation of every piece of evidence that is presented," *Pugh v. Bowen*, 870 F.2d 1271, 1278 (7th Cir. 1988), he "may not ignore evidence that suggests an opposite conclusion." *Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984). The ALJ discussed the September 1989 functional capacity assessment in which Long was able to sit for five hours (one hour continuously), stand for four to five hours (one hour continuously), as evidence of a sedentary residual functional capacity. R. 23. But even this did not support the proposition that standing up a couple of minutes every half hour would enable Long to sit for a six-hour work day. In addition, in considering Long's functional capacity as of the DLI, the ALJ failed to note that a little over a month after being in the "work hardening" program – only about two months before his DLI, Long had to return to a general reconditioning program due to increased pain, sciatica, soreness, depressed knee and ankle jerks, and a mildly positive straight leg raise. R. 302. In short, the evidence in the record

7

tended to contradict the ALJ's determination that standing up for two to three minutes every half hour would enable Long to sit for six hours a day for five days a week.

Irrespective of whether the ALJ properly rejected Long's testimony, the more important point is that there was no evidence in the record that *supported* the ALJ's finding that standing for a couple minutes every half hour would allow Long to sit for six hours a day – a finding that was critical to the VE's opinion and the ALJ's determination that Long could perform sedentary work as of the DLI. *See* R. 95 (standing up two to three minutes every half hour would not affect Long's ability to perform sedentary work "if it's just for a couple of minutes"). The fact that the ALJ made this determination without any medical evidence to support it suggests that he may have, as the Seventh Circuit has put it, "succumb[ed] to the temptation to play doctor and ma[de] [his] own independent medical findings." *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000).

For these reasons, the Court finds that the ALJ committed an error of law in making the determination of residual functional capacity.

## Conclusion

For the above reasons, the Court grants plaintiff's motion for summary judgment [docket # 8-1] and remands the case for further determination of his disability. The Court denies defendant's summary judgment motion [docket # 11-1]. The Clerk is directed to enter judgment remanding the case to the Social Security Administration for further consideration consistent with this Memorandum Opinion.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 6, 2004